[Cite as *State v. Habeeb-Ullah*, 2019-Ohio-4517.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2019-P-0006** |
| - vs - | : | |
| NAIM A. HABEEB-ULLAH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2018 CR 00374.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Wesley A. Johnston,* P.O. Box 6041, Youngstown, OH 44501 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Naim A. Habeeb-Ullah, appeals from the judgment of conviction entered by the Portage County Court of Common Pleas. We affirm in part, reverse in part, and remand the matter for further proceedings.

{¶2} Appellant and K.H. were married in August 2005. At the time of the marriage, K.H. already had a son, D.D., and a daughter, C.M. During the marriage, appellant and K.H. had one son, E.H., who was born in 2008. In January 2008,

appellant and the family moved from Akron, Ohio to Kent, Ohio. They later returned to Summit County in March 2012. And, in July 2015, the couple separated.

{¶3} On January 4, 2018, C.M. and her mother were having a discussion regarding some troubling behavior D.D. had been exhibiting. K.H. indicated that D.D. had a rough life and this could explain his behavior. This angered C.M. causing her to tell her mother she had been through rough things as well, she simply never discussed them with anyone. C.M. subsequently related two events which occurred between her and appellant. The first, in 2010, when she was 10-years-old. C.M. stated she awoke from sleep to notice appellant sitting at the end of her bed. The child asked appellant what he was doing. He responded he looked into her room, noticed what she was wearing (pajama shorts and a tank top), and could not help but enter the room to look at her. C.M. was concerned about the encounter and asked appellant to leave the room, which he did. Nothing further happened.

{¶4} Then, later in 2010, C.M. had been playing outside and prepared to take a shower. Prior to doing so, she went downstairs to the laundry room wearing a shirt and underwear. Unbeknownst to her, appellant was sitting in the living room in the dark. Appellant pulled her into the living room and repeatedly stated "let me show you something," in a "low, eerie, * * * kind of seductive" voice. Appellant proceeded to place C.M. on the couch, positioning her ankles on his shoulders and started "prying at [her] vagina, like poking at it and touching around it" over her underwear for approximately a minute. C.M. was able to "scoot" away, tell appellant "that wasn't okay," and to stop. Appellant stopped and begged C.M. not to tell anyone. There were no other allegations of abuse.

2

{¶5} C.M. was asked why she waited over eight years to disclose the incidences, she stated: "I watched my older brother grow up angry because he didn't have a father in his life. And I didn't want [the incidences] to be the reason why my younger brother didn't have a father in his life. That's why. I didn't want that for him. So I made the sacrifice and just kept it to myself." After the disclosure, K.H. reported C.M.'s statements to the Kent police department. During an interview with police, appellant admitted he recalled the circumstances of the event described by C.M. but disputed he touched the child. Instead, he stated C.M. touched herself as he watched and, afterwards, C.M. begged him not to tell anyone.

{¶6} In April 2018, appellant was indicted on one count of gross sexual imposition ("GSI"), in violation of R.C. 2907.05, a felony of the third degree; attempted rape, in violation of R.C. 2923.02 and R.C. 2907.02(A)(1)(b), a felony of the second degree; attempted sexual battery, in violation of R.C. 2923.02 and R.C. 2907.03(A)(5), a felony of the third degree; abduction, in violation of R.C. 2905.02, a felony of the third degree; and kidnapping, in violation of R.C. 2905.01, a felony of the first degree. Two additional counts were dismissed prior to commencement of trial.

{¶7} After a trial by jury, appellant was found guilty of GSI, attempted rape, and attempted sexual battery, all as alleged in the indictment. After the sentencing hearing, the parties agreed that all counts merged for purposes of sentencing. The trial court nevertheless ordered appellant to serve five years for GSI; an indefinite term of five to 25 years for attempted rape; and five years for attempted sexual battery. Each sentence was ordered to run concurrently. Appellant was also labeled a Tier III sex

offender and was notified of his registration obligations. Appellant now appeals and asserts four errors for this court's consideration. We shall address them out of order.

{¶8} We first point out, appellant's second, third, and fourth assigned errors relate to instances where the trial court excluded evidence. Only evidence which is relevant is admissible. Evid.R. 402. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. The phrase "abuse of discretion" is one of art, "connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood,* 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30.

{¶9} Appellant's second assignment of error asserts:

{¶10} "The trial court committed prejudicial error by not allowing appellant's witness to state character for truthfulness or untruthfulness of another."

{¶11} Under his second assignment of error, appellant contends the trial court erred by not permitting his counsel to question his mother, N.A., regarding C.M.'s character for truthfulness or untruthfulness. Appellant maintains, pursuant to Evid.R. 608(A)(1), he should have been permitted to inquire into C.M.'s character for truthfulness or untruthfulness.

{¶12} Evid.R. 608(A)(1) provides:

{¶13} The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

{¶14} Evid.R. 608(A)(1) permits a party to attack the credibility of a witness via opinion testimony if it refers to his or her character for untruthfulness. N.A. testified that

4

in late 2011 through early 2012, appellant's family, including C.M., lived with her. She stated she assisted C.M. with cooking, bathing, homework, and other daily activities during this time. Nevertheless, N.A. only had significant day-to-day ties with C.M. for some three months approximately six years prior to C.M.'s disclosure. Because appellant failed to establish a closer temporal connection between N.A.'s significant contact with C.M. and the January 2018 allegation, there was no foundation for her opinion as to C.M.'s character for truthfulness. A child's personality and character evolves over time and, to be certain, the six-year period between the ages of 12 and 18 represent a significant evolution in a person's perspective and character. Without a foundation, we conclude the testimony at issue was not relevant.

{¶15} Moreover, as appellant points out, there was evidence presented, in the form of expert testimony, that a person may be motivated by illegitimate ends to fabricate a story, whether to garner favor with another or to satisfy a personal agenda. The jury, therefore, was aware of the possibility of an individual to invent or modify a memory, whether inadvertently or intentionally. Given these points, we find no error in the court's exclusion.

{¶16} Appellant's second assignment of error is without merit.

{¶17} Appellant's third assignment of error provides:

{¶18} "The trial court erred when it denied Children Service Board social worker from testifying regarding the agency's classification of the investigation."

{¶19} Under this assignment of error, appellant contends the trial court erred by excluding the testimony of a social worker from the Summit County Children's Services Board ("SCCSB").

5

{¶20} At trial, appellant proffered the testimony of SCCSB social worker, Julie Mothersbaugh. Pursuant to the proffer, appellant asserts Ms. Mothersbaugh would have testified that the Portage County Child Advocacy Center ("CAC"), with whom SCCSB had contact at the time C.M.'s allegations were disclosed, indicated no sexual abuse occurred; that C.M.'s mother, K.H., was uncooperative with SCCSB's attempts to interview her and her children regarding the allegations; and SCCSB closed C.M.'s case after 60 days, concluding the allegations were unsubstantiated. He maintains these points were relevant to his defense and would have served to provide the jury with a broader view of the investigative process. Thus, he concludes, the trial court abused its discretion in excluding Ms. Mothersbaugh's proposed testimony. We do not agree.

{¶21} First of all, two of the state's witnesses, Nurse Rachel Patterson, who works with CAC and interviewed C.M. vis-à-vis the allegations, and Dr. Paul McPherson, a pediatrician specializing in child abuse cases, touched on appellant's initial point. Nurse Patterson testified she interviewed C.M. and offered the girl a physical exam, but C.M. declined. And, Dr. McPherson testified he reviewed the CAC report and agreed that there was no indication or diagnosis of sexual abuse or sexual assault. Hence, any additional testimony relating to the CAC report would be cumulative.

{¶22} Next, while Ms. Mothersbaugh emphasized K.H. was uncooperative and evasive each time SCCSB attempted to reach her, SCCSB was also aware that K.H and C.M. were already involved with CAC. K.H.'s reluctance to engage SCCSB to its satisfaction could be reasonably seen, in light of her cooperation with CAC, as means protecting her daughter's privacy and avoiding redundant interview processes. Ms.

6

Mothersbaugh also stated, at one point, K.H. agreed to cooperate with SCCSB if it could assist her in filing charges against appellant. Ms. Mothersbaugh noted she communicated with Portage County police officers. It is unclear, however, how SCCSB could facilitate the filing of charges in a county not within its jurisdiction. Ultimately, K.H.'s lack of cooperation with SCCSB is of no relevance to appellant's charges.

{¶23} Finally, Ms. Mothersbaugh stated SCCSB ultimately closed the case file, concluding the allegations were unsubstantiated. Facially, this conclusion would appear germane to appellant's defense. Ms. Mothersbaugh, however, pointed out that when SCCSB was making this decision, it recognized "the children were being protected by their mother, she was reaching out to resources, she had community links to make those connections, the children were safe, [and therefore,] we closed the referral as unsubstantiated." Although the term "unsubstantiated" suggests there was no meaningful substance to the allegation, in this context, it indicates the pursuit of its investigation would be unnecessary due to other factors. This point, therefore, when viewed in the full context of SCCSB's involvement, would have had little relevance to appellant's defense.

{¶24} Appellant's third assignment of error lacks merit.

{¶25} Appellant's fourth assignment of error provides:

{¶26} "The trial court erred when it denied counsel from asking existence of other individuals that may have access to the victim." (sic.)

{¶27} Under this assignment of error, appellant contends the trial court erred when it prohibited his counsel from inquiring into the existence of other unknown

7

individuals that may have had access to C.M. subsequent to the incident. Appellant asserts the trial court's reliance upon rape-shield law as a basis was erroneous.

{¶28} During a pretrial hearing, appellant's counsel requested the trial court to review records from SCCSB to determine whether C.M. had been placed with anyone during its involvement and whether alleged redactions in the records contained information relating to potential placements. Counsel stated that such information would show other individuals had access to the child. In counsel's view, if others had access to C.M., such access could have an impact on her delayed disclosure and thus would assist the defense in cross-examining the state's experts. The state argued that seeking such information would imply C.M. engaged in sexual activity with another individual, which would be protected by rape-shield law. After reviewing the records, the court found the records were not redacted in a way that would suggest C.M. had been placed outside her mother's care. And, the court determined that information regarding any placements were not relevant to the facts which led to the underlying charges. There was no indication of other placements. And, even if there were, counsel failed to establish, beyond speculation, how such placements would somehow affect the nature and timing of C.M.'s disclosure; after all, SCCSB became involved with C.M. in January 2018, over seven years after the incident. We accordingly hold the trial court did not err in finding the records irrelevant.

{¶29} Next, appellant asserts the trial court erred in excluding evidence regarding other potential individuals' alleged access to C.M. when she lived with her biological father. The state objected on relevance grounds. And, during a side bar, the court sustained the objection, additionally citing the rape-shield statute.

8

{¶30} Appellant contends the trial court inappropriately applied Ohio's rape-shield statute. Regardless of whether the trial court sustained the objection on its citation to the rape-shield statute, appellant did not (and does not in his brief) argue or establish the relevancy of who, if anyone other than her biological father, had access to C.M. C.M. commenced residing with her biological father in 2016, well after the incident. We therefore discern no error in the trial court's ruling.

{¶31} Appellant's fourth assignment of error lacks merit.

{¶32} His first assignment of error alleges:

{¶33} "Appellant's conviction was based on insufficient evidence as a matter of law and was against the manifest weight of the evidence."

{¶34} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶35} Alternatively, "a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Velazquez*, 11th Dist. Ashtabula No. 2018-A-0027, 2018-Ohio-5068, ¶15 citing *State v. Schlee,* 11th Dist. Lake No. 93-L-

9

082, 1994 WL 738452, *4-5 (Dec. 23, 1994). "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶36} Appellant was *found guilty* of attempted rape, GSI, and attempted sexual battery. Defense counsel moved the court to merge the offenses for purposes of sentencing. And the court agreed that the charges stemmed from a single event. The prosecutor agreed the charges merged for sentencing; he equivocated, however, on the legal effect of merger which, it appears, led the trial court to improperly sentence appellant on each count. "When the trial court determines multiple counts merge, the defendant can be convicted of only one of the merged counts. At that point, the state must make an election on which count it would like the court to proceed with sentencing." *State v. Jameson*, 11th Dist. Ashtabula No. 2014-A-0069, 2015-Ohio-4634, ¶20.

{¶37} Here, although the trial court agreed that the counts should merge, the trial judge stated her "belief" that the state did not need to elect on any one count. The trial court's belief is erroneous. As just indicated, where counts merged, there can be only one conviction and the state must elect to proceed to sentencing on that count. Here, the prosecutor emphasized that the charge of attempted rape was the count he wished to proceed upon, stating "we're asking the Court to sentence [appellant] to, an indefinite prison term of five years minimum, twenty-five maximum and his out date will be up to the Parole Board pursuant to statue, somewhere in-between five to twenty-five years." This indefinite sentence only applied to the attempted rape count. In light of this statement, we conclude the prosecutor elected to proceed to sentencing on the

10

attempted-rape charge, to which the trial court sentenced appellant to the indefinite term recommended by the state. We shall proceed to consider the evidence advanced by the state in support of this conviction.

{¶38} The attempt statute provides: "No person, purposely or knowingly, when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). A person commits an attempt when he or she takes a substantial step in a course of conduct planned to culminate in the crime. *State v. Woods*, 48 Ohio St.2d 127 (1976). R.C. 2907.02(A)(1)(b), which governs the crime of rape in this case, provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A)(1).

{¶39} Appellant argues there was insufficient evidence to support the attempted rape conviction because C.M. testified he touched her over the underwear and that his fingers did not enter her vagina. In response, the state asserts there was sufficient evidence to support the conviction because C.M. testified appellant was "prying" and "poking" at her vagina. As he did so, he repeatedly stated he wanted to "show [her] something" in a low, seductive voice. The state maintains that such actions constitute a

11

substantial step towards rape and the only reason appellant stopped was because the child scooted back, pulled her legs down, and told him to stop.

{¶40} "Attempted rape requires that the actor (1) intend to compel submission to *sexual conduct* by force or threat, and (2) commit some act that ""convincingly demonstrate[s]""" such intent." (Emphasis added.) *State v. Davis*, 76 Ohio St.3d 107, 114 (1996), citing *State v. Heinish*, 50 Ohio St.3d 231, 238-239 (1990). In *Davis*, the victim was seen pushing the defendant while located inside the defendant's vehicle shortly prior to being shot; shortly thereafter, the victim was found nude on the side of the road and the forensic evidence showed there were possible finger marks on her thigh. Concluding there was insufficient evidence to support a conviction for attempted rape, the Court observed:

> {¶41} While removing the victim's clothing can amount to a "substantial step" toward the commission of rape, * * * a defendant cannot be convicted of attempted rape *solely* on evidence that he removed the victim's clothing. There must be evidence indicating purpose to commit rape instead of some other sex offense, such as gross sexual imposition, R.C. 2907.05, which requires only sexual *contact*." (Citations omitted). *Davis*, *supra*.

{¶42} The court went on to emphasize that "there was no testimony that imprints suggestive of finger marks left on [the victim's] thigh were indicative of an attempt to compel sexual conduct as opposed to sexual contact." *Id.* And witness' testimony that the victim was observed trying to push the defendant away shortly before she was shot "is not strongly corroborative of Davis's intent to accomplish sexual conduct." *Id.*

{¶43} Here, similar to *Davis*, while "poking" and/or "prying" C.M.'s vaginal area outsider her underwear could amount to a substantial step toward the commission of rape, appellant could not be convicted of the offense *solely on this evidence*: The state

needed to demonstrate appellant's purpose was to commit rape, which requires evidence of some attempt to *also* commit sexual conduct, not simply the fact of sexual contact. C.M. specifically denied appellant went under her clothing and was, at all times outside her vaginal canal. She reiterated the latter point by stating appellant was "going around" her vagina, "[j]ust the shape of it." Moreover, the "low," "seductive" nature of his voice tone does not provide any evidence of appellant's purpose to commit sexual conduct. To the contrary, sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). C.M.'s testimony relating to appellant's actions and voice tone would support the conclusion that he was engaging in sexual contact during the incident; they do not, however, demonstrate a substantial step towards committing sexual conduct.

{¶44} Moreover, the state's claim that the only reason appellant stopped short of raping the child is because C.M. took positive steps to stop him is speculative. While it may be true appellant stopped due to C.M.'s affirmative acts, this is not affirmative evidence he took substantial steps toward the commission of rape; rather, it simply implies appellant may have persisted engaging in sexual contact with C.M. had she not been proactive in stopping him. Because there was no evidence adduced that appellant took a substantial step to commit sexual conduct, i.e., some evidence that his specific intent was to insert some body part or object into the vaginal canal or anal opening of C.M., there was insufficient evidence to support the conviction for attempted rape. That

conviction is therefore vacated. In light of this conclusion, appellant's manifest weight argument is moot.

{¶45} The foregoing conclusion does not end the analysis. Appellant was found guilty on one count of GSI and one count of attempted sexual battery. As indicated above, the state acknowledged at the sentencing hearing that the counts should be merged. Notwithstanding the court's agreement, it nevertheless sentenced appellant on both, imposed a five-year term of imprisonment for the gross sexual imposition, a five-year term on the attempted sexual battery, and ordered the counts to be served concurrently with the attempted rape count. This was error. Accordingly, the case must be reversed and remanded for the trial court to permit the state to elect what count on which it wishes to proceed and conduct a resentencing on *only that count.* See *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶26 (While merger prevents a defendant from being punished for allied offenses of similar import, it does not eliminate other determinations of guilt).

{¶46} Appellant's first assignment of error has merit.

{¶47} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded.


TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.

14