[Cite as *State v. Habeeb-Ullah*, 2022-Ohio-3979.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-P-0102** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| NAIM A. HABEEB-ULLAH, | |
| Defendant-Appellant. | Trial Court No. 2018 CR 00374 |

**O P I N I O N**

Decided: November 7, 2022
Judgment: Affirmed

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Naim A. Habeeb-Ullah,* pro se, PID#: A760-153, North Central Correctional Complex, 670 Marion-Williamsport Road, P.O. Box 1812, Marion, OH 43302 (Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}     Appellant, Naim Habeeb-Ullah, appeals, pro se, the judgment of the Portage County Court of Common Pleas convicting him of one count Gross Sexual Imposition and sentencing him to five years imprisonment. For the reasons set forth herein, the judgment is affirmed.

{¶2}     Appellant and K.H. were married in August 2005. At the time of the marriage, K.H. already had a son, D.D., and a daughter, C.M. During the marriage, appellant and K.H. had one son, E.H., who was born in 2008. In January 2008, appellant

and the family moved from Akron, Ohio to Kent, Ohio. They later returned to Summit County in March 2012. And, in July 2015, the couple separated, although they did not formally divorce.

{¶3}   In early 2018, C.M. disclosed to K.H. two events which occurred between her and appellant.  In the first, which occurred in 2010, she awoke one night to find appellant watching her sleep; he left when she asked him to.  The second incident occurred later in 2010.  She disclosed that appellant had inappropriately touched her.

{¶4}   As a result of the allegations, appellant was ultimately indicted on five counts: Gross Sexual Imposition, Attempted Rape, Attempted Sexual Battery, Abduction, and Kidnapping.  Following a trial by jury, appellant was found guilty of Count One, Gross Sexual Imposition, a felony of the third degree, in violation of R.C. 2907.05; Count Two, Attempted Rape, a felony of the second degree, in violation of R.C. 2923.02 and R.C. 2907.02(A)(1)(b); and Count Three, Attempted Sexual Battery, a felony of the third degree, in violation of R.C. 2923.02 and R.C. 2907.03(A)(5).  Though the parties agreed that all the counts merged for purposes of sentencing, the court nevertheless sentenced appellant to five years in prison on Counts One and Three, and an indefinite term of five to 25 years in prison on Count Two, all to run concurrently.

{¶5}   Appellant appealed in 2019, and in *State v. Habeeb-Ullah,* 11th Dist. Portage No. 2019-P-0006, 2019-Ohio-4517 this court affirmed in part, reversed in part, and remanded the matter to the lower court.  In his first appeal, appellant challenged, in relevant part, the sufficiency of the evidence and the manifest weight of the evidence of his convictions.  This court determined that the counts should have merged for purposes of sentencing and that the state intended to sentence on the count of Attempted Rape,

2

even though the lower court erroneously sentenced him on all three counts. Accordingly, this court only analyzed the sufficiency of the evidence as it related to Attempted Rape. Ultimately, this court found that there was insufficient evidence to convict appellant of Attempted Rape, vacated the conviction, and remanded the matter to the trial court.

{¶6} On remand, the lower court found that the state elected to proceed with sentencing on Count One: Gross Sexual Imposition. In its revised judgment entry, the court sentenced appellant to five years in prison, and informed him of his post-release control and sex offender registration requirements.

{¶7} Appellant filed the instant appeal after the 30-day period provided by App.R. 4. However, this court granted his motion for delayed appeal, finding appellant stated satisfactory reasons pursuant to App.R. 5(A), including delays due to COVID-19. The state filed an untimely reply brief with a motion to reply instanter, which this court granted. Appellant assigns one error, which states:

{¶8} The state failed to prove, beyond a reasonable doubt, the offense of Gross Sexual Imposition, and such is insufficient, as a matter of law.

{¶9} Under his sole assignment of error, appellant challenges the sufficiency of the evidence the state presented at trial to support his conviction of Gross Sexual Imposition. "A 'sufficiency' argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense." *Habeeb-Ullah, supra,* at ¶34, citing *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "'[T]he standard of review for a sufficiency of the evidence claim is "whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence

3

Case No. 2021-P-0102

invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." * * * "In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *."' (Citations omitted.)" *State v. Rice*, 11th Dist. Lake No. 2018-L-065, 2019-Ohio-1415, ¶65, quoting *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶23.

{¶10} R.C. 2907.05, Gross Sexual Imposition, of which appellant was convicted, states in pertinent part:

> {¶11} (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> {¶12} * * *

> {¶13} (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶14} "Sexual contact," as used in R.C. 2907.05, is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶15} Appellant challenges the sufficiency of the evidence in three ways. First, that C.M. testified that appellant touched her through her underwear, not her skin directly. Second, he argues that C.M. "had no intention of disclosing" the incident but said it only because she was angry. Third, he argues that the social worker, Julia Mothersbaugh, testified that at the conclusion of her investigation, she found the allegation to be "unsubstantiated."

4

{¶16} Our analysis necessarily begins with a discussion of the testimony and evidence presented at trial. C.M. testified at trial regarding both incidents. The first incident occurred in 2010, when she was 10-years-old. C.M. stated she awoke from sleep to notice appellant sitting at the end of her bed. The child asked appellant what he was doing. He responded he looked into her room, noticed what she was wearing (pajama shorts and a tank top), and could not help but enter the room to look at her. C.M. was concerned about the encounter and asked appellant to leave the room, which he did. Nothing further happened.

{¶17} Then, later in 2010, C.M. had been playing outside and came in to take a shower. Prior to doing so, she went downstairs to the laundry room wearing a shirt and underwear. Unbeknownst to her, appellant was sitting in the living room in the dark. Appellant pulled her into the living room and repeatedly stated "let me show you something," in a "low, eerie, * * * kind of seductive" voice. Appellant proceeded to place C.M. on the couch, positioning her ankles on his shoulders and started "prying at [her] vagina, like poking at it and touching around it" over her underwear for approximately a minute. C.M. was able to "scoot" away, tell appellant "that wasn't okay," and to stop. Appellant stopped and begged C.M. not to tell anyone. There were no other allegations of abuse.

{¶18} C.M. was asked why she waited over eight years to disclose the incidents, she stated: "I watched my older brother grow up angry because he didn't have a father in his life. And I didn't want [the incidents] to be the reason why my younger brother didn't have a father in his life. That's why. I didn't want that for him. So I made the sacrifice and just kept it to myself." She also testified that although she did not disclose the incidents

5

for years, during a conversation with her mother, K.H. implied that her bother's poor behavior was because he had a rough life, it angered her "a little bit" and she told her that she had "been through things, too. Things nobody even knows about."

{¶19} K.H. testified that C.M. disclosed the incident to her in January 2018. In response, she, C.M.'s biological father, C.M.'s older brother, and C.M. all confronted appellant, resulting in a physical altercation. She testified that after she was released from jail following the confrontation, she took C.M. to the police to report the incident.

{¶20} Officer Burton testified that she took a written statement of the allegation from C.M. in January of 2018 and referred the matter to Detective Travis. Detective Travis testified that when she called appellant, he was cooperative. He spoke with her on the phone twice. Detective Travis testified that in the first conversation with appellant he denied anything had happened between him and C.M. but that he was at work at the time of the call and could not discuss further. They made arrangements for a future phone call. A partial recording of the second phone call was played at trial. In that call, appellant admitted that there was an incident when C.M. was 11 years old and said that C.M. was lying about the details. Appellant said one night, late at night, she came to him in her underwear, disclosed a sexual encounter with a boy, asked him about sex, and started touching herself in front of him. He stated that he told her to sit up, and she asked him not to tell her mother because she was afraid of getting in trouble. He agreed not to tell anyone.

{¶21} Ms. Peterson, a Pediatric Sexual Assault Nurse Examiner, testified that K.H. brought C.M. in for an evaluation, during which C.M. disclosed the incident to her. C.M.

6

declined a physical examination because she had recently been examined at another medical facility. Ms. Peterson recommended C.M. attend counseling.

**{¶22}** Appellant, through counsel, presented testimony of a psychology expert who testified that when a disclosure is delayed, the memory can become less clear. She also admitted on cross-examination, however, that in this case, since both parties remember the same event but disagree as to culpability, it is more likely that memory is not the issue in this case, but the veracity of one of the versions of the incident.

**{¶23}** Appellant's mother testified on his behalf that appellant, K.H., C.M., and C.M.'s brothers lived with her between Thanksgiving 2011 and the end of the year. She testified that during that time, she observed C.M. and appellant interact and that C.M. embraced appellant like her biological father. Appellant's sister testified appellant and C.M. had a very loving relationship. Both appellant's mother and sister testified that they did not observe C.M. avoiding interaction with appellant.

**{¶24}** We turn now to appellant's arguments, first addressing the argument that the state failed to present sufficient evidence because C.M. testified that appellant touched her over her clothes. However, contrary to appellant's argument, "sexual contact" does not require skin-on-skin contact, but any touching of an erogenous zone of another even if through clothing. *See State v. Mugrage*, 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶124 ("[S]exual contact does not require that the offender have skin-to-skin contact with an erogenous zone of the victim or, conversely, the victim with the erogenous zone of the offender.") and *State v. Jones*, 2nd Dist. Clark No. 2012-CA-95, 2013-Ohio-3760, ¶21 ("Sexual contact does not require that the offender have skin-

7

to-skin contact with an erogenous zone of the victim; a touching of an erogenous zone covered by the victim's clothing is sufficient.")

{¶25} Thus, appellant's first argument under his sole assignment of error is without merit.

{¶26} Second, he argues that C.M. testified she had no intention of telling anyone and that she was angry when she disclosed the incident to her mom. Appellant argues that this shows C.M.'s statements were unreliable. This argument is not one of sufficient evidence, but of the weight of the evidence, which appellant has not appealed. However, even if we were to consider the weight of this evidence, we do not find it militates against the jury's finding of guilty.

{¶27} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary 1594 (6th Ed.1990) (emphasis omitted). "An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) *State v. Fiederer*, 11th Dist. Lake No. 2019-L-142, 2020-Ohio-4953, ¶12.

{¶28} "''Within a manifest weight of the judgment review, an appellate court considers the credibility of the witnesses. Courts should only reverse based upon manifest weight grounds in "the exceptional case in which the evidence weighs heavily against the conviction."'" *Id.*, quoting *Tompkins, supra,* quoting *State v. Martin*, 20 Ohio

8

App.3d 172, 175 (1st Dist.1983). "Moreover, 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact (* * *) unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" *Fiederer, supra,* quoting *State v. Redman*, 10th Dist. Franklin No. 10AP-654, 2011-Ohio-1894, ¶7.

{¶29} "Further, '[t]he trier of fact is free to believe or disbelieve all or any of the testimony. * * * The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. * * * Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. * * * '" *State v. Elliott*, 11th Dist. Portage No. 2008-P-0026, 2009-Ohio-918, ¶37, quoting *State v. Sevilla*, 10th Dist. Frankin No. 06AP-954, 2007-Ohio-2789, ¶13.

{¶30} We do not find this is the case in which the evidence weighs heavily against the conviction. Certainly, C.M.'s state of mind when she disclosed the incident is relevant to weighing the veracity of her statements. However, the jury, which was in the best position to determine the witness' credibility, was presented with this information and determined C.M. to be truthful. Moreover, just because a statement is said in anger does not necessarily make it untruthful. C.M.'s motive in telling her mother about the incident could have been just to prove to her, as she stated, that she's "been through things, too." We find a reasonable juror could find that C.M.'s testimony to be credible despite her anger.

9

**{¶31}** Third, appellant asserts that Julie Mothersbaugh, a social worker with Summit County Children's Services, testified that she found the allegation to be unsubstantiated. However, the court did not permit Julie Mothersbaugh to testify to the jury; her testimony was proffered. "Proffer testimony is not evidence." *In re Thomas,* 5th Dist. Tuscarawas Nos. 94AP060039 and 94PA060041, 1994 WL 728303, *1 (Dec. 27, 1994). As this testimony was not presented to the jury, it cannot be considered when determining whether the jury lost its way in resolving conflicts in the evidence. Moreover, any challenge to the court's decision to exclude the testimony of Julie Mothersbaugh could have been raised in appellant's first appeal. As such, the doctrine of res judicata prevents appellant from raising the matter now.

**{¶32}** Moreover, even if Julie Mothersbaugh's testimony had been presented at trial, we do not find it supports appellant's argument. In her proffered testimony, Julie Mothersbaugh found that C.M. had been removed from the abusive situation, had no further contact with the perpetrator (appellant), that her mother was "getting her linked up with Community Resources for counseling." She also looked into concerns that there was another young child, E.H., who was in the custody of the perpetrator. Ms. Mothersbaugh determined that K.H. had stopped contact between appellant and E.H., which she apparently found satisfactory. She expressly stated, "the decision was since the children were being protected by their mother, she was reaching out to resources, she had community links to make those connections, the children were safe, we closed the referral as unsubstantiated." It appears from her proffered testimony that this disposition was made not because she found the allegations against appellant to be unsubstantiated, but because she determined that C.M. was safe in the care of her

10

mother. Accordingly, even if Ms. Mothersbaugh's testimony had been admitted at trial, it does not support appellant's argument in the appeal at bar.

{¶33} After careful review of the record, we find there was sufficient evidence to convict appellant of Gross Sexual Imposition and that such conviction was not against the manifest weight of the evidence. C.M. testified that appellant had touched her vaginal area and that afterward, appellant had asked her to keep it secret. From these actions and attempts at secrecy, the jury could have reasonably concluded that appellant had touched C.M.'s erogenous zones for the purpose of his own sexual gratification. The conviction for gross sexual imposition was, therefore, based upon sufficient evidence and was not against the manifest weight of the evidence.

{¶34} Appellant's sole assigned error is without merit.

{¶35} In light of the foregoing, the judgment of the Portage County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

11

Case No. 2021-P-0102